step up, identify ourselves for the record, and then we'll proceed with the argument. I presume that you did not use this interval for a 402 conference. Well, what about based on that new case? Let the attorneys identify themselves. Case number 07-3102, People v. Bernard Williams. May it please the Court, Arianne Stein on behalf of Bernard Williams. Manny McGinsey on behalf of People v. State Law. Thank you. When the appellant is ready, you might proceed with your argument. Thank you, Your Honor. You can keep in mind, I think you know the ground rules here. You're entitled to 15 minutes per side as a matter of right, although we won't necessarily measure it out if there is any need on our part for any further clarification or exposition. You may save as much time as you prefer for your rebuttal. You can also presume that we have read the briefs, although I never discourage any reference to the facts because they're always helpful, but I don't think you have to do so other than in terms of using your reference to the facts as reminders rather than as being first impressions. Yes, Your Honor. Again, may it please the Court and Counsel, I'm Arianne Stein on behalf of Bernard Williams, and I'm first going to discuss the first issue in the briefs concerning actual innocence, and then I'll move on to the issue of timeliness concerning the second issue. Well, I mean, there seems to be perhaps logically a sequential logic in going the other way, since the issue of timeliness may well depend on whether there is an exception to the timeliness rule if, in fact, there is a claim of actual innocence, which invokes really the two issues. First, is there a claim here of actual innocence? And secondly, is that effective in view of the asked to, is the operational impact of that exception applicable to this post-trial, post-conviction proceeding, which was initiated before the change in that statute, allowing for that particular exception? But one would think that we would be interested in hearing what you have to say on the latter issue first. Okay, certainly, Your Honor. But if that is a terrible inconvenience to you, I'm not trying to control how you planned out your procedures here. No, not at all. I'm happy to discuss the timeliness issue first. Concerning that second issue, Williams' petition was timely filed. Post-conviction counsel filed the supplemental petition in December of 2006. And at that time, the Post-Conviction Hearing Act held that claims of actual innocence are not subject to time limitations. Accordingly, when this actual innocence claim was filed, it was timely filed. While we're talking about timeliness, we should be talking also about Hegner, shouldn't we? Yes, Your Honor, yes. Because one can speculate that that case seems to have somehow fallen between the cracks for both parties, because I'm sure that the State, as well as the defense, are aware of their responsibility to mention these cases that may be dispositive, no matter which way they cut. But I presume somehow it eluded either of you until the last minute, but you might want to discuss it. Absolutely, Your Honor. And I apologize for not having that in the initial briefs. It did escape my attention. And in order to be effective on behalf of Mr. Williams, I did find it necessary to present that case to the court before argument. No, I'm glad you did when you did, because it may very well dispose of the issue. Absolutely, Your Honor. In People v. Heger, according to that case, the petition actually wouldn't be due until 2008. In Heger, the Illinois Supreme Court held that when a reviewing court orders the circuit court to remand for a resentencing hearing, then the tolling for a post-conviction petition doesn't start. So why don't you remind us of the chronology, why the resentencing would have occurred within the time limit of under 122? Certainly. The resentencing order was entered on February 3rd of 2005. And thus, under the statute, his petition actually wasn't due until three years after that time, February of 08. So whether we're looking at the initial petition filed in 01 or even the supplemental petition filed by counsel, that which was filed in 06, either of those were long before the 08 due date. And thus, Heger, in this case, is dispositive of the timeliness issue, and he did file his petition on time. I'm going to do something, again, that's somewhat unorthodox. But in view of the dispositional character of Hegner, if it really applies, I might think that I would ask the State whether they're going to offer any opposition to that. Yes, Your Honor. All right. Then in that case, proceed with your argument. Okay. Thank you, Your Honor. Another point to point out is that common sense would dictate that Williams mailed his petition in a timely manner. The petition was received by the court on December 5th of 01. What does that mean? I'm trying to figure out. It says that it was received December 5th of 2008, but it was filed in May. Or is it March? I'm sorry. Which one is it? It was filed in May of 02. What does it mean received? Is there a file stamp that says received on it? Yes, that's correct. There's two stamps on it? Do you have a copy? I know it's in the record, but does the copy show two different dates, received December 5th, and then file? And then file stamped, exactly, six months later in May. That's correct, Your Honor. Was the file searched for an envelope or anything like that? Yes, our office did search for further information on the file, and there was nothing in that file. Where did it come from, though? Do we know where it was in the penitentiary? When he initially filed it, it was at Stateville. Okay. And what day of the week was the 5th? Do you recall? The 5th was a Wednesday. Okay. So, I mean, I know you're arguing common sense and everything, and there was one case that said if – People v. Montgomery, Your Honor? I believe so. It said if it was received on a certain date, it had to take a couple of days to get there. To be received by the court. Exactly, yes. And the jurisdiction of the court isn't really an issue here like it was in the case that we issued Talachi. Right, right. The jurisdiction of whether to accept a motion to vacate was really whether the court had jurisdiction. Here, no one's disputing that the trial court had jurisdiction over this post-conviction petition. That's correct. There is one aspect of it that conceivably creates some measure of uncertainty. How are we certain here that the mailing was through the prison mail system as opposed to giving it to a visitor to drop an ordinary mail and wouldn't an affidavit under the 12b-3 serve the purpose of at least assuring us that it went through the prison system, which would provide the basis for any further inference? That's true, Your Honor. But the parties below did both seem to agree that it was mailed from the prison. There wasn't a dispute about that fact below. And here in this case, because the Post-Conviction Petition Act has this safety valve where petitioners can file a petition late if they allege a reason for culpable negligence. And I believe here where the petition was received by the court only two days late, I don't think anybody could say that it wasn't. So there wouldn't be any culpable negligence simply in the failure to file the certificate or the affidavit, which probably would be attributable to counsel and under Risley not necessarily be attributed to the defense on the culpable negligence issue. Yes. Yes, exactly, Your Honor. As a matter of fundamental fairness, as well as procedural and substantive due process, a petitioner should be afforded additional process. On the other hand, is there any possibility of finding culpable negligence even if it was mailed within the due date but only by the skin of its teeth, so to speak? In other words, for not having dropped it in the mail earlier for waiting until the last minute. Is that necessarily a not as a matter of law, so to speak, be encompassed in culpable negligence? Or can culpable negligence be attributable to someone who waits until the last minute? Well, Your Honor, I think if we say that he was culpable negligent, that it would lead to an absurd result in this case. Because when he filed the petition, if he had filed his actual innocence claim in 01, then it would have been time barred. But if he had waited until the legislature changed the statute until the end of 03, and he had waited two more years to file his petition, then it would not be time barred. So I think to say that he was culpably negligent here would lead to this absurd result. I mean, Williams could refile this petition today in a new petition and file this actual innocence claim. But then that would be a successive petition. It wouldn't be an original petition. So there's a little bit of a different hurdle, although the successive petition, if it alleges actual innocence, I suppose. Exactly, because actual innocence claims are never time barred. But if we follow Hager, we don't even get into culpable negligence, do we here? That's true. That's true. Again, his petition was early, according to Hager. So we would have to disregard what the Illinois Supreme Court said to even get to that point. Right. Exactly, Your Honor. And, again, because his petition was timely and because he made this substantial showing of actual innocence, we ask that he move on to a third stage evidentiary hearing. Well, since the trial court didn't address the actual innocence, do you feel that you have to argue further in regard to that issue? The trial court never reached whether this stated a claim for actual innocence, did it? No, not in its order. It was discussed at the hearing on the motion to dismiss the petition, but not in the written order. So would he ever reach that if the court never really did? Well, this court has de novo review in this case, so it can advance the petition if it deems that that's worthy based on the facts in the petition. And pursuant to that actual innocence claim, he did make this substantial showing through newly discovered evidence that would have undermined the State's entire case against him. Williams presented first an affidavit from an investigator at the Public Defender's Office. The investigator spoke with Martin Nash. Well, it seems to me that the State raises about three different arguments as to the timeliness of the evidence of the proof of actual innocence. And I think they also challenge whether this evidence in fact establishes actual innocence, although I think I'm going to wait for the State to explain its position as to that. But in terms of the timeliness, they urge that, first of all, the public defender, the investigator for the Public Defender's Office is dealing with the hearsay from Nash in the face of recantation evidence and in the face of at least the dictum in People v. Morgan that seems to disparage the value, the weight to be given to recant the testimony in the first instance, although I think you're perfectly correct that in Morgan it was done after an evidentiary hearing. Those comments were made after an evidentiary hearing. But nevertheless, the dictum is there that, and the further fact that it was a hearsay statement reported by the public defender, by the investigator for the public defender, and they challenge the affidavit of Smith on the grounds that the State was, the defense was aware that Smith was at the scene and would have been under some obligation, at least that's the State's position, that the defense had made a greater effort to locate him and not simply rely on the assertion of the State's attorney that they couldn't find him. So with that, I will let you state your piece on that. I just want to ask you one other question. Was Smith incarcerated at the time he gave that statement? I'm not sure if that is known, Your Honor. No, I don't believe that he was. Nash was. Nash was incarcerated, right. And was he incarcerated at Statesville also? I'm sorry? Was he incarcerated at Statesville? I'm not sure actually the location of Nash when he was incarcerated and gave the statement, but he was also incarcerated and serving sentence at the time of trial. I might as well drop into that. He's the one that wouldn't sign the affidavit, correct? Right, that's correct, Your Honor. The State also urges that you don't have absolute proof of innocence since you do have an orally reported confession. And I kind of know what your position is, but I'll let you state that. Okay, certainly, Your Honor. Concerning that statement first, the statement was given under very suspicious circumstances. Detective Cato testified that the defendant gave this oral statement, but then immediately when the State's attorneys were called right after to take the statement from Williams, Williams said he wanted a lawyer. So he would not repeat the statement. Also, the statement was never memorialized. The only notation of it is in a supplemental report taken the day after he allegedly gave the statement. And in effect, the other circumstances, the Puff Affidavit, the Smith Affidavit, and the Nash Affidavit, in addition to offering proof in their own right, also act to corroborate, in this instance, Williams' denial that he ever made the statement. Right, that's exactly correct, Your Honor. Are you still contending that Williams did not make the statement? That's correct. That's exactly what he testified to at trial, Your Honor. And the statement is therefore not dispositive of the outcome of the case. Again, Nash was the only witness to identify Williams as a shooter at the scene. And even though the affidavit by the investigator here, the State argues, is hearsay, in People v. Sanchez, the Illinois Supreme Court held that an affidavit from an investigator is sufficient when one can't be obtained from a witness because the subpoena power of the court will force that witness to be available at the hearing. The purpose of requiring this supporting documentation is to show that the petitioner's allegations are capable of independent corroboration. And that's exactly what the investigator's affidavit does here. I know, as Justice Gordon has stated, the State does cite two People v. Morgan, but again, that was after a third state hearing. And that's really all you're asking for here is a third state. Right, exactly. The recantation in that case came 17 years after the conviction. How many years was it here? Here it was approximately seven years after. So it was much longer in Morgan, and the court there noted that it was very important to have this evidentiary hearing to weigh the credibility of these new affidavits against the testimony that came out at trial. Also, the recantation here was newly discovered. It was not available at trial and couldn't have been discovered sooner through due diligence. In People v. Barnsleder, the court held that recantations can be newly discovered simply because a defendant knew that a witness was lying at the time of trial doesn't mean the recantation isn't new. Williams here had no control over Nash's testimony or when Nash would recant. Now, concerning the affidavit from Smith. Well, I can depart from Barnsleder even though I authored it. Well, I believe that although Barnsleder. Rhetorical question. Yes, Your Honor, although I do believe that that statement in Barnsleder that recantations can be discovered newly evidence is controlling here. Well, they can be, but they don't have to be. Right, that's true. That's true, but it does allow recantations to be newly discovered evidence. And in this case, again, there was nothing in the record that showed that he could have received this recantation at a sooner time. Affidavit from Erickson. Well, it basically expresses to say that even though you know that testimony is false, that doesn't mean that a delay in obtaining a recantation is in and of itself dilatory. Correct. That's correct, Your Honor. Williams was incarcerated after trial, and it wasn't until assigned counsel was appointed that he actually had the resources to go out and investigate further on the case. Now, concerning Smith's affidavit, Smith didn't testify at trial, and his affidavit said he was at the scene, he saw the shooters, and that Williams was not a shooter. This, too, along with the recantation would have changed the outcome of the trial. The state denies that, saying that it wouldn't have changed the outcome in part because Smith's David doesn't give certain details such as his vantage point. However, that argument shows exactly why we need an evidentiary hearing in this case. If the affidavit is taken as true, which it must be at this stage, then it does rebut Nash's testimony. The state has also made the argument that Nash's testimony is more reliable than Smith's because Nash did give some of those details such as his vantage point. But Nash has now recanted. He's given reasons as to why his testimony was unreliable, saying that he got a deal from the state, he was high at the time of the identification, and that the police told him who to identify. So we can't say that Nash's testimony, which he has now recanted, is somehow more reliable than this new affidavit. The state also argues that Williams was not diligent in obtaining Smith's affidavit and that he should have obtained it sooner because he was listed as a witness on discovery. But Smith couldn't be found prior to trial. And, in fact, the state's attorney, at the motion to dismiss the petition, stated to the court that neither the prosecution nor the defense could find Smith prior to trial. Yet there is nothing in this record to show that there was any individual initiative by the defense to locate him, that it was simply a reliance on an investigator's, the state's conclusory statement as to their inability to find him. But there was no initiative undertaken, and yet he was found through a chance encounter with somebody's relative on the street. That's true, Your Honor. Although there is the testimony of Detective Cato below, who testified at trial that Smith couldn't be found, that attempts were made to find Smith and that the police couldn't find him. So we have the police being unable to find him. We can't put a more onerous burden on Williams to find him. And, in fact, even the circuit court below stated it wouldn't have made sense for Williams to try and find Smith where, one, the police couldn't find him, and where, two, he thought that Smith might inculpate him. So even the trial court was surmising that it wouldn't make sense for Williams to go out and look for this witness. And People v. Green is also instructive in this case. In Green, the defendant told counsel after trial had started that his picture had been in the paper. Counsel didn't find out until after the trial concluded that this key witness at the trial had seen the defendant's picture before the lineup. And in that case, the court held that the evidence was newly discovered. Even though counsel there knew about this witness, they didn't know this key important piece of information that the witness had seen the picture. Similarly, in this case, even though Williams and defense counsel might have known of the existence of Smith and that he was a potential witness, they didn't specifically know what his account would be. And it wasn't until Smith was discovered and contacted post-conviction counsel that that information became available. Thus, Smith's statement could not have been discovered earlier through due diligence. And accordingly, based on these new affidavits, the case should be remanded for an evidentiary hearing because this newly discovered evidence would have changed the outcome of trial. Thank you. You'll get a couple of minutes for rebuttal. Thank you, Your Honor. Once again, Your Honors, Manny McGinsey on behalf of the people of the State of Illinois. I'll address the second issue first because that was the order. The second issue has now become the first. It's become the first. Specifically with regard to Hager's applicability in the Wilson case. In Hager, the sentences had actually been vacated and the underlying offense had been remanded to the circuit court for resentencing. In the instant case, on the direct appeal, the sentences weren't vacated. One was remanded. Yeah. It was only the whether there was consecutive or concurrent. Right. And the law in Illinois is clear that consecutive or concurrent merely determines how the sentence is served. It doesn't determine what the sentence actually is. So unlike Hager. So is it your position that the term conviction, which has been redefined in Hager to include both the actual conviction as to guilt and the sentencing, that this term conviction applies to the finding of guilt and the sentencing even though the sentencing is excessive? Because that's what the result is of transforming consecutive sentences into concurrent sentences. This Court did not vacate the 10-year sentences on the aggravated battery of a firearm. It merely remanded for determination by justice. Well, you know, that's a very, I mean, I don't by any means fault your attempt to distinguish it that way, and I'm not even bottom lining the validity of it. But in point of fact, it's the point where the mathematical logic departs from the living facts. Because in effect, in resentencing consecutive sentences, transforming them into concurrent sentences, you're changing what are 10-year sentences served consecutively, meaning 20 years of incarceration,  and it's a very subtle distinction to say, well, it's the same 10-year sentence transplanted in a different order. And I don't know that you want, that the rationale behind Hegner should warrant that kind of distinction since the post-conviction motion may very well not be able to attack the sentencing for the same reason that it couldn't attack the sentencing when that sentence is actually the product of a so-called resentence. Part of the rationale is if you're going to file the post-conviction proceeding, the post-conviction petition, you're not going to be able to challenge the entire conviction, meaning both aspects of guilt as well as time to be served. That same rationale seems to be operative whether it's a resentencing in terms of invalidating the, so to speak, the actual sentence and creating a new one as opposed to reshuffling the time, the sequence of the service for the sentences already given. As I said, the Illinois Supreme Court has held that consecutive sentences, consecutive versus concurrent merely determines how the sentences are served. In this case, Excuse me for interrupting you a little bit more here. The point of it is can a post-conviction petition be directed at the propriety of a consecutive sentence even though it doesn't challenge the term of that consecutive sentence? And if it can, then the rationale for starting the time, the limitations period on filing the petition, that rationale would be the same whether it involves an actual resentence as opposed to a reshuffling of the sequence. Well, I don't have a definitive answer for it. I have the answer that I posit, which is that there is a distinction between vacating a sentence and remanding a cause with an incomplete disposition of the case as opposed to saying merely Judge Smith, determine whether these two sentences that you've imposed, which are legal, should be served concurrently or consecutively. To put it in another way, and it's rhetorical, if this were a state that allowed wagers and you had to wager on how the Supreme Court would receive your distinction as opposed to the defendant's distinction, which side would your money be in? I'm not a gambling man, but I trust the powers of my advocacy. And I would point out, if I were before the Supreme Court, I would point out that Hager doesn't seem to be reconcilable with the post-conviction statute that was in effect in 2001 when this petition was filed. I think that statute governs. The fact that subsequently the statute was amended to allow for claims of actual innocence is irrelevant under Harris. I mean, I think I understand your distinction of Hager, but what about this suggestion that if he hadn't filed this initial pro se petition and the subsequent petition that was filed with the attorney's assistance was filed, then there's no time frame as far as statute of limitations for the actual innocence claim. Well, all I can say is it reminds me of the Wizard of Oz and we're told to disregard the man behind the curtain. We can't disregard that this petition was filed in 2001 and we can't disregard that it was controlled by the statute that was applicable when it was filed in 2001 to say, well, if he had been sufficiently dilatory and waited, that this claim would have been amended. But why wouldn't the statute that's in effect at the time that he amended the petition have any impact on his petition, the amended petition that alleges actual innocence? Why shouldn't we apply the statute that was in effect for actual innocence claims? Because the same element of Supreme Court that decided Hager decided people versus Harris and said that the statute that was in effect at the time the original petition is filed is the statute that controls. Okay, fine. Here, let's talk about the next question. The lawyer for the defendant has pointed out that the parties seem to agree that this document was mailed. Are you in agreement with that? As far as I could tell from the record, it was mailed. It was mailed, and it was mailed from Stateville. I don't know where it was mailed from. Well, he was in the penitentiary. He was in the penitentiary. I mean, the record itself will show that he was in Stateville. I admit he was in the penitentiary. The record, the common law should have every indication of where he was, but let's assume he was in Stateville. Okay. Okay. So, I mean, can you honestly say that if the circuit court says they received this on the 5th, that it wasn't mailed probably two days before from Stateville? But that's speculative. Supposing it were the next day. Suppose he did mail it. Suppose he did mail it. Did he get reasonable assistance if his attorney didn't allege no lack of culpable negligence? Because I mailed this thing the day it was due. Okay. Well, here, I think there's a difference between the attorney's obligation to amend the petition to make sure he alleges no culpable negligence and what, in fact, constitutes culpable negligence. And I think that the defendant was obligated to comply with the rules, including 12D3 and Rules 373, to file with his petition. And I've seen it in other cases where the petition mailed from the Department of Corrections has a notarized affidavit, notarized by a notary at the DOC, saying, you know, subscribers weren't to be mailed on such and such a date. Okay. What about the Montgomery case, then? How would you distinguish that one away? This is not a question of the court's jurisdiction. This is not a motion to vacate, rather, a guilty plea like the Talachi case. Right. It's not at all the same. There's no question this court had jurisdiction to consider the petition. Right. So we're not really talking about the same thing. Right. What about Montgomery? Montgomery said that, you know, you have to assume it took a couple of days to get this thing. And I think you can assume, but I don't think you can assume. What happens if Williams has a member of his family who visits him on December the 4th and drives back, visits him from Cook County, Williams gives him the petition, the visitor drives back to Cook County. Now you're saying it wasn't mailed. No, no. I'm saying that the record doesn't establish conclusively. Well, hypothetically. Let me shift the facts hypothetically. Okay. Where the petition is received the very next day rather than two days later. At that point, would you still insist that the 12B3 formality must be implemented, notwithstanding the mathematical degree of certainty that would inferentially or circumstantially attach to the date of mailing? I would say if there were absolute inferential or circumstantial evidence that the petition had actually been mailed, then maybe your point is well taken, Your Honor. However, the Illinois Supreme Court in Bright v. Bickey, or is it Bickey v. Bright, I never remembered the order of it, says that our rules are not suggestions, they are binding. Well, if they're binding, they're binding, whether it's a day or a thousand years. The bailing rule is what it allows is the filing to be when the document is mailed. So, I mean, in this case, there's nothing to suggest that it probably wasn't. It was mailed timely, two days. I understand Your Honor's point. And all I'm saying is that my recollection of the record, and I don't have the record in front of me, but my recollection of the record is it merely contains the petition. It does not contain, while it probably was mailed, because most people at DOC communicate with the courts through the mail, I'm saying that I don't know that for a fact. I don't know that my hypothetical is any more true than anything else. I'm just saying that there are other possible explanations for how this petition, for which there is no. Well, I'll grant you this. I don't think we dispute the fact that the Supreme Court, in its rule, will reject secondary proofs, such as letters, cover letters, unsigned affidavits, other forms of indicia that would corroborate the mailing short of the affidavit that B-3 insists upon. But the question is, will it also reject the certainty of a mathematical inference? You asked me earlier if I were a wagering man. Despite my confidence in my advocacy skills, I have to say I would be no more than a 50-50 chance to win. What did you say about Montgomery? What was your explanation? I'm hard pressed off. Oh, so you can't really distinguish. Is that a first district case? I think so, yes. So you can't distinguish. Is there something wrong with that case? Again, no, I don't think there's anything wrong with it. I think that what's distinguishable is the fact here and the failure to comply with a reasonably ascertainable rule. It's not, you know, some arcane rule hidden, like I said, based on my. Well, there was never really any hearing on this whatsoever. No, there was. So do you have a problem with the hearing at least for that case? The truth of the matter is I don't think it's relevant, and the reason I don't think it's relevant is I don't think this case should go back for third stage proceedings, and that goes to the concept of newly discovered evidence. Yes, and we know what you argued as far as that in your briefs. I think the defense position is untenable because it says we can know the identity of this witness. First of all, the State met its burden. Our burden was to prove the defendant guilty beyond a reasonable doubt. We did not have a burden to call Puff Smith as a witness. Secondly, the record does not establish that we couldn't locate Puff Smith for trial. Now, even Cato's testimony in the co-defendant's case, which was not offered as to Williams, Cato's testimony was I couldn't find him during the investigation. Cato was not asked, nor did he ever say, I couldn't find him or even I looked for him to get him into court to testify. Judge Claps, who heard the motion to dismiss, was not the trial judge. Fred Soria was. Julia Nikolaevskaya, the assistant state's attorney who argued the motion to dismiss, was probably still in high school when this case was tried because I remember her coming through appeals during my tenure there as a new assistant state's attorney. So the fact that she may have answered perhaps an inartfully phrased question by Judge Claps I think Judge Claps's question really was, was this witness called? And the answer to that was no. Judge Claps, however, phrased the question, this is the witness neither side could find, and both Julia Nikolaevskaya and the assistant public defender who represented the defendant on the motion after appointment by Judge Soria answered yes. Neither one of them was party to the litigation. The judge was not a party to the litigation, and I cannot understand how the defense can find support for its position in a statement made by two attorneys having no personal knowledge of the case to a judge who had no personal knowledge of the trial of the case in response to a question at a hearing nine years after the case was tried. But, excuse me, the question is, I can see that there's no doubt that Eric Puff Smith did not testify at trial. That's all we know. We don't know why he didn't testify at trial. We do know that the defense was aware of his existence as a witness from the very outset of the case, that the defendant himself knew who Puff Smith was. That Puff Smith's affidavit doesn't say I was unwilling to come forward, he says. The only reason was I didn't testify. I would have testified, but nobody asked me to. Would the due diligence burden, as it applies to the defense in the context of the timeliness of the petition, impose the burden on the defense to pursue all possible occurrence witnesses? Well, are only occurrence witnesses who show the likelihood of testifying favorably to their cause? I think that they were under an affirmative obligation. The due diligence requirement in Barnsleder, I believe, Barnsleder quotes a case, the gist of which is that due diligence opposes an affirmative obligation to make the effort to locate. What do they have to know about the witness before they have the burden of pursuing that proof? Since the natural order of things are that the state bears the burden of establishing guilt, so that the state has the burden of pursuing its proofs, while the defendant at the actual trial has no burden whatsoever, except perhaps in alibi cases where the burden can be shifted. That's true. So now the burden that you're talking about at the time of trial is a burden on the defense to anticipate the necessity of a post-conviction petition in which he has to be able to formulate his proof, as opposed to the burden that is actually imposed on him with respect to proof of innocence. No, I don't think so. You know, I think the cases do go towards that direction, but there's a bit of an anomaly there. Well, no, because we're talking about the burden in two different settings. I know, but basically the defense is now under a burden, although he bears no burden to prove innocence in his direct trial. He bears that burden, while of course in practicality there could be ineffective assistance of counsel if there are witnesses who can prove innocence that he doesn't investigate, at least to the extent that they're mentioned to him by his client. But in effect what we're saying is the defense bears a burden of pursuing proofs, whichever direction they may go to, because he will not know in advance what this witness's testimony will be. Yet he bears that burden as of the time of trial to anticipate the post-conviction procedure. That seems to be what Orange and the other cases say. You know, I understand all your arguments about whether this petition really states a claim for actual. But I want to go back to this other thing, because I think that it's really, I want to hear what you want to say about this culpable negligence. Let's assume that this petition is two days late. You know, a day late and a dollar short. Now, culpable negligence is something greater than ordinary negligence and is akin to recklessness. Now, do you want to say that this is akin to recklessness when a guy in prison mails his petition two days late? Is that really recklessness? No. What's reckless is the disregard of the requirement for the proof of service that is required. That's reckless? To ignore a simply and easily ascertained requirement. There was no case before Talachi that even said that the rule required this. There were a number of cases that had petitions filed with a proof of mailing. But frankly. But that's, I, well, I just, I cannot buy into. But with all due, with all due deference. Ignoring Supreme Court rule, a pro se defendant ignoring a rule that he's probably not aware of when he's sitting in the penitentiary, you know, doing his 50 plus 10, is akin to recklessness. But there's more to that. There's more to that. There's more to that than simply ignore being late in filing. The point to be made is while even if you're right that 12B3 requires the formality of an affidavit, the proof of timely mailing without an affidavit can still be presented on the issue of culpable negligence. So that if the claim is you are late in filing, let's assume that even being a day late is culpable negligence. What would preclude that defendant from introducing the cover letters or the unsigned affidavits or the belated testimony at a later date simply to show that he wasn't negligent. That the only possible negligence is the failure to attach the affidavit. But that the earlier mailing was in fact made. And as to that, the inference that is to be drawn from the fact that it was received two days later, while it may not be the categorical inference that will lock in the B3 compliance, will be sufficient to establish lack of culpability. You know, I don't have a real answer to you. Obviously I understand the concept of circumstantial evidence. And certainly if there were, say, an envelope postmarked attached to it, which there isn't in this record. Maybe, I don't know where anything was. All I saw was the petition itself. But I understand the concept of circumstantial evidence. I think the rule requires. And that would certainly have a bearing on whether even if there was a failure, that would be dispositive if it all hung on 12B3. Even if that was the case, which we're a long distance from addressing to. I understand that. There would still be the fact that you would have to fight the notion that those inferences of timely mailings, while not sufficient to satisfy 12B3, would be sufficient to show that he wasn't negligent. Well, not simply, not culpably negligent. If it was mailed on time, it doesn't really matter whether he has an affidavit. When it was put into the mail is actually the critical issue here. Not whether he attached his affidavit. If he did mail it on two days, then. The Supreme Court requires that affidavit as proof of the mailing. Yeah, I understand. But we've got the guy asking us whether he was culpably negligent, which means was he reckless. And you've explained that you believe he was reckless. I can't agree with that characterization. And that's all right. You know, you'd say he was reckless. Reasonable minds can differ. I think that the court should have at least had a hearing to determine whether this kind of a situation amounts to recklessness. As I pointed out in my brief, regardless of the timeliness issue, and I'm not absolutely confident that I will prevail with you on the question of timeliness, and I understand that based on your questions here, this court can affirm, as long as the result was correct, this court can affirm for any basis, even if the judge didn't rely on it. Now, I agree, the judge doesn't seem to have addressed. But are you saying that if we conclude that the petition or that there should have at least been a hearing on whether the petition was timely, that we could affirm on some other basis? Absolutely. No, if the petition should have been allowed to be filed, then it should go forward. It was filed and it did go forward. There was a hearing on the motion to dismiss it. There was never a hearing on the motion about the amended petition. There's never been a hearing on whether it amounted to a pleading that's stated. Well, that's what I'm saying, is where the record supports the correctness of the outcome. And I think it does because the court was incorrect in dismissing it. I don't see how we get to the next point. Well, because it doesn't make any difference. I don't think we should allow an incorrect result. No, the result is not. That's the correct dismissal of the petition. Even if the basis for the dismissal, that being timeliness, even if you were to find that the dismissal for timeliness is incorrect, the dismissal of the petition was, in fact, correct, because none of the evidence offered is either so dispositive as likely to change the outcome of the case or, in fact, newly discovered as a matter of law. Well, I think you stand a better shot than newly discovered, at least with me. And I'm not saying you stand any shot, but if you do, you stand a better shot with newly discovered than you do on whether it amounts to actual innocence, because if all we have to stand on for his conviction is the prior testimony of Nash and the oral confession, then I think the testimony of Smith, the affidavit of Smith, that he was there and he didn't see the defendant among the shooters, and the recantation of Nash, particularly with his explanation that he was high on dope and he made a deal with the state, can survive a challenge to it being proof of actual innocence. Well, I think, among other things, I think that the defendant is precluded from challenging the sufficiency of the confession in this proceeding, because it's not being challenged on constitutional grounds. A post-conviction proceeding raises constitutional issues that could not have been raised before. The defendant didn't challenge. But he can still use that to establish actual innocence. No, because this Court has found on affirming the conviction, as the trial judge did, that that confession was competent evidence of the defendant's guilt. But we're not talking about competency. We're talking about weight. In terms of establishing actual innocence, how much weight is left to that oral confession in the face of Nash's recantation and Smith's original affidavit that he was not a shooter? Smith didn't say that. But he said he was not among them. Now you're quibbling on side points. Let's stay with the main course. The main course issue is whether, in the light of, I mean, if you want to argue what Smith says or not, you can do that. I'm not precluding you. But I think we're jumping track in completing this, addressing ourselves to this point. In the face of Smith's statement that he did not, who was coming towards them, and he did not see Williams among the shooters. He said he didn't look like Williams. Yeah, all right, okay, whatever. And Nash's recantation, how much weight is left to the original confession and is what is left in the weight of the original confession sufficient to vitiate the petition's claim of actual innocence? I think it is. It may be ultimately on the merits. But in terms of establishing actual innocence, he doesn't have to win that point. He simply has to urge actual innocence to overcome timeliness. And how can you really overcome those two evidentiary shifts to challenge whether he has sufficiently pled actual innocence so as to overcome the time limits? Because you're getting into a factual determination. But you don't have to determine the ultimate merits for that purpose. You simply have to determine whether there is a claim of actual innocence. Well, first of all, you have to determine two things. One, is it newly discovered? Was it something that the defendant, through due diligence, could not have discovered earlier? And simply waiting nine years until a fortuitous encounter allegedly between defendant's brother and Smith doesn't show due diligence. The defendant conceded. He conceded in the trial court. He conceded during the trial. He conceded on the hearing on the motion to dismiss that he made no effort to secure Smith's statement for nine years. That's not due diligence as a matter of law. Well, I indicated to you that, you know, I put the argument on newly discovered in a separate category from the other. I understand because it is a two-pronged issue. One, is it newly discovered? And second, if it is, is it sufficient that it probably would change the outcome of the trial? And I'm saying to you … Let me ask you a question. Surely. Isn't the bottom line that you want to keep it in Stage 2? I'm sorry, I … Isn't the bottom line you want to keep it in Stage 2? The bottom line is I think the Stage 2 resolution of dismissal was proper even if the judges … But you're not answering my question. Is the bottom line you want to keep it in Stage 2 or not? The bottom line is, as far as I'm concerned, Stage 2 has been passed and the matter is over. And this court should affirm that resolution. I'm not trying to be difficult or truculent and not answer your question. But I think you're asking me to concede something that I don't want to concede. I'm not asking you to concede anything because obviously you won't concede. If I put this pair of glasses up here and I say this is a pair of glasses, you won't concede it as a pair of glasses. You'll still call it an elephant. That's besides the point. No, I … A pair of glasses is a pair of glasses. I think it was properly resolved at the second stage. Therefore, it is, in fact, forever a completed second stage proceeding. And that's … Well, I think you've wrung every bit of argument out of your facts that you can. And I think maybe we want to, unless you have something to add, we want to … I just … The only thing I would say is this. If you subscribe to the notion that the defendant's failure to do anything to locate, ascertain Smith's testimony for nine years, meets the first prong of the test for newly discovered evidence, the due diligence prong, then in essence you're setting up a system where the defense can sandbag the prosecution. So now you're parading the horribles. No, I just … I think that … That's as a last resort, you trundle out the horribles. No, it's not a last resort. It's just … It's an observation. I believe that the defendant didn't exercise due diligence with respect to either Smith or Nash. The public defender was appointed in, I believe it was August of 2003, to represent the defendant. Didn't make an effort to contact Nash, who was easily located because he's doing life on the installment … Wait a minute. Wasn't there two appeals during this period of time, cases going back and remanded and all kinds of things happening? Not while during the … I mean, the first conviction was pending, but the fact is it was … We had two appeals. There was two appeals during that period of time. Went back to the trial court. That time period that you're talking about is flawed. I don't know the second appeal. The first appeal was a direct appeal. I don't know … There was one. I think there were two in the Pager case. Yes, there were. Okay. I'll take your word for it. There were two? Okay. But the fact is that the direct appeal didn't have anything to do with these issues, and the public defender was appointed for the post-conviction in August of 2003 and didn't get Nash's statement until … But he wasn't the same public defender that was appointed on the other matters, was it? It was different public defenders. That I don't know. Yes. In any … I mean, the record says what the record says. The record does say what the record says, and the record, I think, establishes conclusively that the defendant made no timely effort to secure the information that's now offered as newly discovered evidence, and without a lack of any affirmative timely effort to do so, the defendant can't meet the first prong for newly discovered evidence, a due diligence prong, and, therefore, the result was the right one, even if the basis for the judge's ruling was not the right one. And, therefore, this Court has authority to affirm the outcome because the outcome was correct. Thank you. Thank you. Will two minutes be too much? I think that should be just about right, Your Honor. I just have a few brief points to make. Concerning the second issue of timeliness, the State tries to distinguish People v. Hager saying that the sentences weren't actually vacated, but there was a new sentencing hearing, new fact-finding went on, it was a substantive change in the sentence. And Hager relied on People v. Woods, which held that the date of conviction, that's the date of the final judgment, including the sentence. The date that that sentence was entered is when tolling starts. Of course, you know, in Apprendi, consecutive sentences were not considered to be under the Apprendi rule and can still be determined by the judge rather than by the trier of fact. So the distinction that the State wants to make between concurrent and consecutive sentences is not something fabricated out of whole cloth. That's true, Your Honor, but we are dealing here with a, again, it's a post-conviction context, and we have this safety belt feature of the Post-Conviction Act. What about the argument that if you don't establish, if the newly discovered evidence falls and that these allegations don't show that there would have been a different outcome, do you agree that you cannot prevail? If we conclude that the amended petition doesn't allege actual innocence because it's defective as far as that the evidence was not newly discovered, that there was any diligence really in getting this later affidavit, do you agree that you lose? Well, I think because, again, the court below in its order didn't specifically address that actual innocence claim. So, again, it could be remanded for the court for further second stage proceedings for the court to actually finally rule on those merits. But if we were to conclude that the allegations were not newly discovered, in other words, that this doesn't meet the newly discovered test, do you agree that we can affirm on that basis? If that's true, then yes, and there's no actual innocence claim that he could proceed on. While the recantation still remains, do you think that the recantation of Nash would be sufficient to establish actual innocence, even if the Smith affidavit were rejected as not being newly discovered? Yes, Your Honor. Nash's recantation would be sufficient. So we have to say both are newly discovered. Right, right. Exactly. And you don't agree that Nash's recantation could have been discovered earlier because he wasn't willing to recant until he recanted. Well, but, again, he's the one that wouldn't sign the affidavit. There's nobody helping him. I can see how the state could argue based on the statement in Morgan and generally that the Nash recantation in and of itself would not be sufficient to establish actual innocence. I say that because I don't want the state to leave here feeling that their argument was aborted. It's something that obviously we're going to consider. I'm not suggesting that either because we've read the briefs and there's many arguments as to why this actual innocence claim is defective and certainly supported by case law. So I'm not suggesting that. At any rate, if there's nothing further to be said,